**FORTIS LLP**
Sang Dang, Esq. (SBN 214558)
Salvatore Picariello, Esq. (SBN 190442)
650 Town Center Drive, Suite 1530
Costa Mesa, CA  92626
Telephone: (714) 839-3800
Facsimile: (714) 795-2995
Email: sdang@fortislaw.com
          spicariello@fortislaw.com

*Attorneys for Plaintiffs Alvantor Industry Co., Ltd.
and Ningbo Leedor Industry Co., Ltd.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALVANTOR INDUSTRY CO., LTD. and NINGBO LEEDOR INDUSTRY CO., LTD, <br><br> Plaintiffs, <br><br> v. <br><br> SHENZHEN JORDA TRADING CO., LTD., DBA ELEVENS, PEX FIX, ET AL., SHENZHEN 703, AKA, SHENZHEN QILINGSAN NETWORK TECHNOLOGY CO., LTD., NEUTYPE, AND MIRUO MIRROR, INC., <br><br> Defendants. | Case No: 2:22-cv-04844-DOC-JPR <br><br> **SIXTH AMENDED COMPLAINT FOR UNFAIR COMPETITION, TRADE DRESS INFRINGEMENT, COPYRIGHT INFRINGEMENT, AND TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Alvantor Industry Co., Ltd., ("Alvantor") and Ningbo Leedor Industry Co., Ltd. ("Leedor", and collectively with Alvantor, the "Plaintiffs"), by and through their attorneys, file this Sixth Amended Complaint ("SAC") alleging unfair competition, trade dress infringement, copyright infringement, and intentional

interference with prospective economic advantage, seeking equitable and injunctive relief, and appropriate compensatory damages, attorneys' fees and costs, and enhanced damages against defendants Shenzhen Jorda Trading Co., Ltd. ("Jorda"), dba Elevens, PexFix, et al., Shenzhen 703, aka, Shenzhen QiLingSan Network Technology Co. Ltd., ("703"), and Miruo Mirror, Inc. ("Jorda" or "703" or "Neutype" or "Miruo," each a "Defendant" and collectively, "Defendants").

In support of their SAC, Plaintiffs state and allege as follows:

1.     This is an action and complaint for unfair competition and trade dress infringement under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), and the laws of the State of California (both under State common law and California Business and Professions Code §§ 17200 and 17203), copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. § 501 *et seq*., and intentional interference with prospective economic advantage under California law. Alvantor seeks compensatory damages under 15 U.S.C. § 1117(a) and 17 U.S.C. § 504, as well as a finding that Defendants' conduct constitutes willful, intentional, and deliberate, and therefore Alvantor seeks enhanced damages pursuant to 15 U.S.C. § 1117(b)(1) and (2). In addition, Alvantor and Leedor also seek compensatory and punitive damages under California law for Defendants' intentional interference with prospective economic advantage.

## THE PARTIES

2.     Plaintiff, Alvantor is a corporation formed and existing under the laws of the state of California having a business address at 1931 Santa Anita Avenue, South El Monte, California 91733.

3.     Plaintiff Leedor is a professional manufacturer and trader of tourist and leisure products. Leedor is a business entity formed and existing under the laws of the Peoples Republic of China and having a business address of No. 288 Yindong North Road, Binhai, Yinzhou 1931, Ningbo Zhejiang 315145.

4.     On information and belief, Defendant Jorda is a business entity formed and existing under the laws of the Peoples Republic of China and having a business address at Room 502, Ganglong Building, Minkang Road, Minzhi, Longhua, Shenzhen, Guangdong 518000 China, solely owned and operated by its CEO, Mr. Yiwei Gu.

5.     On information and belief, and based upon information provided by Defendants, Defendant Jorda does business under the names and brands of at least Elevens, Neutype, and Mirou.

6.     On information and belief, Defendant 703 is a business entity formed and existing under the laws of the Peoples Republic of China and having a business address at Room 502, Ganglong Building, Minkang Road, Minzhi, Longhua, Shenzhen, Guangdong 518000 China, and, according to statements made on behalf of the Defendants, subject to discovery and proof at trial, is also known as ("aka") Shenzhen QiLingSan Network Technology Co., Ltd.

7.     On information and belief, Defendant 703 does business under at least the names PexFix, and/or 703.

8.     On information and belief, Defendant Miruo is a business entity formed and existing under the laws of the State of Colorado and having a business address at 2707 West Mansfield Avenue, Sheridan, Colorado 80110, United States.

9.     On information and belief, Miruo does business under the names Miruo and/or Neutype, and on information and belief is co-owned by the same individuals as Jorda.

## JURISDICTION AND VENUE

10.     This action arises under the Copyright Act, Title 17 of the United States Code, particularly under 17 U.S.C. §§ 501, 504, 15 U.S.C. §§ 1052, 1117, 1125(a) and the common law of the State of California, California Business and Professions Code §§ 17200 and 17203, and 28 U.S.C, § 1332 as to Defendant, Miruo as to

Diversity Jurisdiction.  Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a) and 1367.

11.  Defendants are subject to this Court's specific and general personal jurisdiction and/or California's Long Arm Statute.  Upon information and belief, each of the Defendants are transacting and doing business within this District. In addition, Defendants have directed their illegal conduct complained of herein to this judicial district, thereby causing damage to Plaintiffs in this District and is subject to the jurisdiction of this Court pursuant to Rule 4 of the Federal Rules of Civil Procedure.

12.  In addition, at least Defendant Jorda, pursuant to at least two DMCA counter-notices (the "DMCA counter-notices") that it submitted pursuant to 17 USC § 512, has consented to the jurisdiction of any United States Federal District Court in which Amazon.com may be found. True and correct copies of the DMCA counter-notices are attached hereto collectively as Exhibit "11" and are incorporated herein by this reference as if set forth in full. Upon information and belief, Amazon.com can be found in this District.

13.  Venue is proper in this District pursuant to 28 U.S. Code §§ 1391(b)(1) and (c)(3) as at least Defendant Jorda and Defendant 703 do not reside in the United States.

## **BACKGROUND**

14.  Alvantor is a product design technology company designing and commercializing new and innovative products, including portable tents and related products.

15.  Alvantor is also an online distributor of, among other products, its outdoor and indoor tents, for utility and recreation purposes.

16.  Two of the primary products that Alvantor sells are the BUBBLE TENT and the SCREEN TENT line of portable gazebos.

17.  The Alvantor BUBBLE TENTS and SCREEN TENTS are designed

and manufactured in different sizes, including 4-sided, 6-sided, 8-sided, and 10-sided tents.

18.     Alvantor began distributing and selling its SCREEN TENT and/or its BUBBLE TENT portable gazebos in interstate commerce in or about May 2019, including on its website and through the Amazon Marketplace. A true and correct copy of a page from Alvantor's www.alvantor.com website showing its BUBBLE TENT line of goods is attached hereto as Exhibit 1 which is incorporated herein by this reference as if set forth in full.

19.     Amazon's Marketplace is an online e-commerce platform that allows for third parties like Alvantor and Leedor to sell products on that platform.

20.     Upon information and belief, Amazon is the world's largest online retailer.

21.     Alvantor products are listed on Amazon's website under a main category (including "Sports & Outdoors" or "Patio, Lawn & Garden", and a subcategory (including "Camping Screen Houses & Rooms"/"Screen Houses & Rooms" or "Gazebos"). Upon information and belief, Amazon assigns separate Best Seller rankings to the main category and to the subcategory based on Amazon's proprietary algorithms.

22.     Since November 2019, Alvantor has sold over 80,000 BUBBLE TENT and SCREEN TENT portable gazebos, generating more than $15 million in sales. Alvantor's BUBBLE TENT and SCREEN TENT portable gazebos are offered and sold to consumers for personal use as well as to commercial establishments who use them for social distancing purposes for their customers during the COVID-19 pandemic. Based in part upon these facts, Alvantor alleges that it has a valid, protectable interest in the trade dress related to the BUBBLE TENT and SCREEN TENT as used by Alvantor.  More particularly, Alvantor alleges that: (1) its brand, and trade dress are descriptive and have acquired secondary meaning in the marketplace;     and     (2)     are     well-recognized     "Best     Sellers"     on

1  Amazon.com.  *See* <u>Applied Information Sciences Corp. v. eBay, Inc.</u>, 511 F.3d 966

2  at 970 (9th Cir. 2007).

3       23.    Moreover, Alvantor alleges that: (1) it is the senior user within

4  interstate commerce of its marks, brands and trade dress; (2) it has continuously

5  used its brands and trade dress without interruption since November 2019; and (3)

6  the Alvantor brand and trade dress have a substantial level of market usage, market

7  penetration, and market acceptance. *See* <u>Dep't of Parks & Recreation v. Bazaar Del</u>

8  <u>Muno, Inc.</u>, 448 F.3d 1118, 1125-26 (9th Cir. 2006); <u>Optimal Pets, Inc. v. Nutri-Vet,</u>

9  <u>LLC</u>, 877 F. Supp. 2d 953, 958-59 (C.D. Cal. 2012).

10      24.    Alvantor's BUBBLE TENTS and SCREEN TENTS have received

11  widespread acceptance and popularity in the United States and around the world for

12  both personal and business applications, including, with the advent of the COVID-

13  19 pandemic for use as a portable dining restaurant "bubble."   *See* Exhibit 2

14  attached hereto and incorporated herein by this reference as if set forth in full,

15  showing Fox News and others promoting and showing use of Alvantor's tents to

16  assist businesses as part of the COVID-19 pandemic.

17      25.    As a result of the promotion and sales of its portable tents and gazebos,

18  using Alvantor's copyrights, designs and trade dress, such goods offered and sold

19  are recognized by consumers and the trade to be of the highest quality, highly

20  distinctive, and are provided by Alvantor with superior customer service. As a

21  result, the Alvantor intellectual property, including its copyrights, trademarks, trade

22  dress, and designs, and the goodwill associated therewith are of inestimable value to

23  Alvantor.

24      26.    In connection with selling of its tent products on Amazon, Alvantor's

25  listings for such products contain a distinctive "look and feel" relating to

26  presentation, marketing, advertising, and description of the respective products (the

27  "Description(s)"). These Descriptions and associated trade dress and branding are

28  strongly recognized in the industry as a source identifier for Alvantor. A true and

correct copy of a printout of an Alvantor listing for a BUBBLE TENT showing an example of such Descriptions is attached hereto as Exhibit 3 and is incorporated herein by reference as if set forth in full. Alvantor alleges that the Alvantor brands and trade dress are very clearly identified and described on Alvantor's Website and on the Amazon.com platform. *See* <u>Vans, Inc. v. Target Corporation</u>, Case No. SACV 18-2258 AG (ADSx), 2019 WL 3312459, at *2-3 (C.D. Cal. Apr. 8, 2019).

27.    The Description was first published in or about November 2019.

28.    The Description is the subject of Copyright Registration No. TX-8-938-135 (the "'135 Registration"), dated February 25, 2021, and Copyright Registration No. TX-8-957-004 (the "'004 Registration") which are owned by Ms. Lun Xu. True and correct copies of the "unofficial preview" of the '135 and '004 Registration certificates provided by the United States Copyright Office and deposit copy therefor are attached hereto as Exhibits 4 and 5 which are incorporated herein by reference as if set forth in full.  Ms. Xu, the President of Alvantor, exclusively licensed Alvantor to utilize, list, market, and sell the subject BUBBLE TENT and SCREEN TENT designs and products for the benefit of Alvantor's business for profit.  A true and correct copy of the Licensing Agreement between Ms. Lun Xu and Alvantor is attached hereto as Exhibit 12 and is incorporated herein by this reference as if set forth in full.

29.    Alvantor uses these Descriptions pursuant to said Licensing Agreement which provides Alvantor with the rights to enforce the copyrights in the Descriptions and to bring actions regarding the infringement thereof. Upon information and belief, long after Alvantor published its copyrighted advertising and the Descriptions, and its other intellectual property, including its BUBBLE TENT mark, in interstate commerce in connection with portable gazebos, Defendants, without Alvantor's authorization, copied and substantially copied the Descriptions and other elements of Alvantor's intellectual property as part of Defendants' offering and sale of portable gazebos on Amazon (respectively, the "Infringing

Content" and the "Infringing Products") on or about June 24, 2022, as shown in the attached Amazon.com advertisements posted by Defendants, true and correct copies of which are attached hereto collectively as Exhibit 6 and which are incorporated herein by reference as if set forth in full.

30. Defendants' Infringing Products offered under the Infringing Content are sold alongside genuine Alvantor BUBBLE TENT portable gazebos on Amazon at similar price points and targeted to the same types of consumers to whom Alvantor targets its products. In connection with the Infringing Products sold on Amazon.com Defendants, without authorization, used product descriptions on its Amazon listings for these products that are copied from, substantially similar to and in some portions nearly word-for-word identical to the description portion of the Descriptions.

31. Since the filing of Alvantor's Second Amended Complaint (SAC) and the filing in January, 2023 of Defendants' Rule 12(b)(6) Motion as to the SAC, Alvantor discovered and promptly disclosed to Counsel for Defendants additional infringing products being actively marketed and sold at the time of said discovery, and likely continuing to be sold by: a. Defendant SHENZEN 703, by and through its wholly owned brand PEXFIX on Walmart's Website; b. Defendant NEUTYPE and Defendant Shenzhen Jorda Trading, LTD., Co.'s dba, ELEVENS by and through Home Depot's Website; and c. Defendant MIROU MIRROR, INC. by and through Wayfair's Website. Defendants' Walmart product listing includes Infringing Content.

32. Specifically, on information and belief, in or about June 2022, and long after the May 2019 first sales by Alvantor, defendant Shenzhen Jorda commenced promoting and selling its copied 10x10, and 12x12 "bubble tent" tents (the "Copied Goods") on the Amazon e-commerce platform:

A.     Examples of the copied and infringing products by defendant Shenzhen Jorda in various 10' x 10' configurations are shown in Exhibit 6 attached hereto and incorporated herein by reference as if set forth in full.

B.     The Defendants Copied Goods have been marketed through the Amazon e-commerce platform under a multitude of different ASINs, including, without limitation numbers:   B0B5R7JBWW (SCREEN TENT); B0B5R754NS; B0B5R9TD2Q    (BUBBLE    TENT);    B0B5RCF739;    B0B68GGDNF; B0B68H6VWQ; B0B68KHGRC; B0B68KPLD1; B0B48PQ8RT; B0B48SD5N6; B0B48Z2VKX; B0B55T7ZW5, B0B55TFHYH, B0B55TLTV6, B0B55T7YXC, and B0B4982JTB.

C.     Many of these ASINs are associated with different named manufacturers, even though the product is identical, which is a violation of Amazon sales policies.

D.     Through even a cursory comparison of the Alvantor Bubble Tent designs, shown in Exhibit 3 attached hereto, and the Copied Goods by Defendants, shown in Exhibit 6 attached hereto, shows the obvious and striking infringement of the Alvantor tent designs and design elements, both of which are incorporated herein by this reference as if set forth in full.

E.     More particularly, a comparison shows that the Copied Goods by Defendants copied and are strikingly the same as the Alvantor Bubble and Screen Tents with respect to:   (a) the same number of sides or panels as the Alvantor bubble-style tents; (b) each of the panels are fully clear or transparent; (c) the tents have two opposing panels with roll up, zippered doors that are hinged at the top; (d) the remaining panels are formed without doors or windows; (e) a lower skirt section to each of the sides or panels; (f) a roof line or shape that forms into the opened tent; and (g) the easy, "self-opening" assembly.

F.     As alleged above, on or about June 24, 2022, upon becoming aware of the infringing conduct of defendant Shenzhen Jorda, Alvantor prepared and

submitted, to the infringement complaint department of Amazon, notices of such infringements, noting the copyright infringements by Shenzhen Jorda, doing business as Elevens and/or PexFix.

G.    On or about June 24, 2022, Amazon appropriately disabled the infringing sales pages by Jorda.

H.    Without basis or any support, and plainly as a means of revenge or retaliation, Defendant Shenzhen Jorda, and/or Defendant Shenzhen 703, and/or Defendant Neutype, and/or Defendant Miruo, which all appear to be related business entities, in July 2022, submitted complaints (the "Defendants Notices") to Amazon improperly alleging copyright infringement on the part of Alvantor and Leedor.

I.    Copies of the notices Alvantor received from Amazon and/or through Alvantor's seller portal are attached hereto collectively as Exhibit 7 which are incorporated herein by this reference as if set forth in full. Copies of the notices Leedor received from Amazon and/or through Leedor's seller portal are attached hereto collectively as Exhibit 8.

J.    Plaintiffs' representatives were in communication with Defendants' representatives through emails and texts via WeChat. Copies of the email exchanges and their certified English translations are attached hereto as Exhibit 16.  Copies of the text exchanges on WeChat and their certified English translations are attached hereto as Exhibits 17 and 18.

K.    As shown in the email exchanges (Exhibit 16) and the text exchanges on WeChat (Exhibit 18), Defendants threatened multiple times that Defendants would attack Plaintiff's businesses and their product sales, but without any basis or reason for such attacks other than malicious revenge. After each time that Defendants made a threat, an Amazon attack on Alvantor and/or Leedor would occur within a few days.

L.      In an email dated June 30, 2022 (China afternoon time), Defendants' representative (Mr. Mengmeng Guo) threatened to attack Alvantor's Amazon listings within 48 hours (see Exhibit 16). On or about July 2, 2022, the first malicious Amazon complaint was filed against Alvantor alleging copyright infringement (see Exhibit 7).

M.      In an email dated June 3, 2022 (China afternoon time), Defendants' representative (Mr. Mengmeng Guo) insinuated that actions may be taken against Leedor's Amazon listings (see Exhibit 16). In an email dated July 5, 2022 (China morning time), Defendants' representative (Mr. Mengmeng Guo) threatened to attack Plaintiff's Amazon listings (see Exhibit 16). On or about July 5, 2022, the second malicious Amazon complaint was filed against Alvantor alleging copyright infringement (see Exhibit 7). The malicious Amazon complaint failed to specify the copyrighted content that is allegedly being infringed (see Exhibit 7).

N.      Also, on or about July 5, 2022, the first and second malicious Amazon complaints were filed against Leedor for copyright infringement (see Exhibit 8). In one of the malicious Amazon complaints, the asserted copyrighted content provided was a link to a fictitious web page that shows a Leedor product listing. In other words, a Leedor product listing was used to build a fictitious web page which was then used to file the malicious Amazon complaint against Leedor (see Exhibit 8). Technical or IT expertise was likely required to create the fictitious web page. Coincidentally, in his threatening email dated July 5, 2022 (China morning time), Mr. Mengmeng Guo (Defendants' representative) stated that his "technical team" will file complaints against Plaintiffs' ASINs/Amazon product listings (see Exhibit 16). Furthermore, in his email dated July 3, 2022, Mr. Mengmeng Guo insinuated that although his "technical department" may not be involved now, his "technical department" may get involved in the future (see Exhibit 16).

O.     On or about July 21, 2022, the third malicious Amazon complaint was filed against Leedor for copyright infringement (see Exhibit 8). In the malicious Amazon complaint, the asserted copyrighted content provided was a link to an Alvantor product listing (see Exhibit 8). In other words, an Alvantor product listing was used to file the malicious Amazon complaint against Leedor.

P.     In a WeChat text message dated July 25, 2022, Defendants' representative (Mr. Yiwei Gu) insinuated that Defendants' will take retaliatory actions. On July 26, 2022, the fourth malicious Amazon complaint was filed against Leedor for copyright infringement (see Exhibit 8). The fourth malicious Amazon complaint failed to specify the copyrighted content that is allegedly being infringed (see Exhibit 8).

Q.     On information and belief, one or more of the Defendants, in particular defendant Neutype, have been providing false and misleading information to the public relating to Defendants' domestic offices, and Defendants' leadership. More particularly as shown in Exhibit 9 attached hereto and which is incorporated herein by reference as if set forth in full, defendant Neutype represents on its public Website that Neutype has offices in and signage on a building in California: https://www.neutypechic.com/pages/our-story.  Yet the image shown in the Neutype Website is a fabricated and altered image.  The building shown does not in fact include the signage shown in the Neutype website, as shown by the current photograph taken outside of the actual building as shown in Exhibit 10 attached hereto which is incorporated herein by this reference as if set forth in full.

R.     Moreover, the images and descriptions of the Neutype leadership, as presented in the Neutype Website are similarly fabricated and false. Of the six individuals shown as the leadership of Neutype, five are simply stolen images from the internet, and are likely not associated with defendant Neutype.

S.     This false and misleading advertisement by defendant Neutype is consistent with Defendants' false, improper, and baseless accusations made against Alvantor.

T.     In response to such Defendants' malicious complaints, on or about July 2 and 5, 2022, Amazon disabled two of Alvantor's sales and advertising pages for two of Alvantor tent designs, being the 8-sided tent, and the 6-sided tent.

U.     Thereafter, Alvantor promptly advised Amazon that the Defendants' malicious complaints were incomplete and faulty on their face, were without support, and should be dismissed.

V.     On or about July 6 and 11, 2022, Amazon reinstated the Alvantor tent sales pages, but during the approximate one week of disabled sales pages, Alvantor lost sales in an amount of between $30,000 to $40,000 for each sales page, each day that the pages were disabled.  Alvantor has also lost significant revenue and continues to lose revenue due to losing its "Best Seller" and "Preferred Seller" status as directly caused by Defendants' improper Notices.

W.     As a direct result of Defendants' malicious Amazon complaints, Alvantor's "Best Seller" and "Preferred Seller" status has been disabled by Amazon, directly causing Alvantor a significant loss of sales revenue of its BUBBLE TENTS and SCREEN TENTS.

X.     Prior to Defendants' first Amazon complaint against Alvantor on July 2, 2022, Alvantor's Best Seller ranking for the subcategory was consistently 1. One day after Defendants' first Amazon complaint was filed, on July 3, 2022, Alvantor's Best Seller ranking for the subcategory dropped below 1 (as low as 9). Furthermore, the Best Seller ranking for the main category and/or the subcategory significantly affects sales. Prior to Defendants' multiple complaints to Amazon, Alvantor's Best Seller ranking in the main category was as high as 403 (with lower numbers representing a higher ranking). After Defendants' Amazon complaints, Alvantor's Best Seller ranking in the main category dropped to as low as 9832. The

-13-

precipitous drop in Alvantor's Best Seller ranking, as a result of Defendants' Amazon complaints, directly caused Alvantor's sales to drop significantly.

Y.    Since the filing of Alvantor's Second Amended Complaint (SAC) and the January 2023 filing of Defendants' Rule 12(b)(6) Motion as to the SAC, Alvantor discovered and disclosed to Counsel for Defendants additional infringing products being actively marketed and sold at the time of said discovery and likely to be continuing to be sold by:  a. Defendant SHENZEN 703, by and through its wholly owned brand PEXFIX on Walmart's Website (true and correct copies of said Walmart Website Sale Pages are attached hereto collectively as Exhibit "13" and are incorporated herein by reference as if set forth in full); b. Defendant NEUTYPE and Defendant Shenzhen Jorda Trading, LTD., Co.'s dba, ELEVENS by and through Home Depot's Website (true and correct copies of said Home Depot Website Sale Pages are attached hereto collectively as Exhibit "14" and are incorporated herein by reference as if set forth in full); and c. Defendant MIROU MIRROR, INC. by and through Wayfair's Website (true and correct copies of said Wayfair Website Sale Pages are attached hereto collectively as Exhibit "15" and are incorporated herein by reference as if set forth in full).

Z.    Alvantor continues to lose sales for each tent design, as compared to sales prior to the malicious and baseless accusations and illegal actions by the Defendants.  Alvantor seeks compensatory damages for all such lost sales.

AA.    As a direct and proximate cause of the unfair competition, intentional interference with prospective economic advantage, trade dress infringement, copyright infringement by Defendants of Alvantor's intellectual property, Alvantor is being substantially and irreparably harmed in its property rights for which Alvantor is entitled to monetary and equitable relief.

BB.    Unless enjoined by this Court, Defendants' unfair competition, trade dress infringement, and copyright infringement, the resulting harm to Alvantor will continue for the foreseeable future.

-14-

33.     Leedor is Alvantor's sister entity. Leedor is a professional manufacturer and trader of tourist and leisure products. Among other things, Leedor manufactured several products for Alvantor that are at issue in this action, including the BUBBLE TENTS and SCREEN TENTS. Leedor also sells a number of its own products to consumers, including sales on Amazon.com. Several of these products are also at issue in this case.

34.     Leedor products are listed on Amazon's website under a main category (including "Patio, Lawn & Garden"), and a subcategory (including "Gazebos"). Amazon's Best Seller ranking for the main category and/or the subcategory significantly affects sales.

35.     On information and belief, Defendants filed four Amazon complaints against Leedor throughout July 2023, causing Leedor's product listings to be delisted well into August 2023. Prior to Defendants' Amazon complaints, Leedor's Best Seller ranking was as high as 16 in the subcategory, and as high as 4,606 in the main category. After Defendants' Amazon complaints, Leedor's Best Seller ranking dropped as low at 811 in the subcategory, and as low as 159,918 in the main category. The precipitous drop in Leedor's Best Seller ranking, as a result of Defendants' Amazon complaints, directly caused Leedor's sales to drop significantly. Although Leedor's Amazon product listings were eventually reinstated, Leedor continues to lose sales for each tent design, as compared to sales prior to the malicious and baseless accusations and illegal actions by the Defendants.  Leedor seeks compensatory damages for all such lost sales.

## FIRST CLAIM FOR RELIEF
## (UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a))

36.     Alvantor repeats and realleges and incorporates by reference Paragraphs 1 through 35 of this SAC as if fully set forth herein.

37.     This claim arises under the provisions of the Trademark Act of 1946, Section 45 of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, particularly under 15

U.S.C. § 1125(a) and alleges the use in commerce of false designations of origin, false descriptions and false representations.

38.     Long prior to the acts of Defendants complained of herein, Alvantor extensively used its trade dress elements (as identified and discussed in Paragraphs 52-69 and shown in FIGS. 1-9 below) to identify its goods and to distinguish it from the goods and services provided by others.  The distinctiveness of the Alvantor trade dress elements are understood by consumers and the trade that portable gazebos that Alvantor offered are designed by, manufactured by, distributed by, and originate from and are provided by Alvantor.

39.     Upon information and belief, Defendants have copied the Alvantor trade dress elements with the express intent to cause confusion and mistake, to deceive and mislead the purchasing public, to trade upon the reputation of Alvantor.

40.     Defendants' copying of the Alvantor trade dress elements is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods and services, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods and services are sold, authorized, endorsed, or sponsored by Defendants, or that Defendants are in some way affiliated with or sponsored by Alvantor.

41.     Defendants' unauthorized use of the Alvantor trade dress elements constitutes a use in interstate commerce of a false designation of origin and a false and misleading description and representation in commerce, with knowledge of the falsity, which is likely to cause confusion, mistake and deception all within the meaning and in violation of 15 U.S.C. § 1125(a).

42.     Defendants' improper and unauthorized use of the Alvantor trade dress elements has caused and, unless enjoined, will continue to cause irreparable harm and damage to Alvantor and its business, reputation and goodwill and has caused Alvantor to suffer monetary damages in an amount not thus far determined.

43.     Unless restrained and enjoined, Defendant's aforesaid acts will cause

Alvantor irreparable harm and damage for which there is no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

## (COMMON LAW UNFAIR COMPETITION AND CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200 AND 17203)

44.     Alvantor repeats and realleges and incorporates by reference 1 through 43 of this SAC as if fully set forth herein.

45.     This claim arises under the common law of this State and California Business and Professions Code sections 17200 and 17203.

46.     As discussed in Paragraphs 52-69 and illustrated in FIGS. 1-9 below, Defendants adopt and use Alvantor's distinctively trade dress elements in Defendants' products.  As a result, the purchasing public and the trade are likely to attribute to Defendants the authorized use of Alvantor's trade dress elements by Alvantor as a source of origin, authorization and/or sponsorship of Defendants' goods, and therefore, to purchase Defendants' goods based on that mistaken belief.

47.     Upon information and belief, Defendants intentionally misappropriated Alvantor's trade dress elements and the goodwill associated therewith by using Alvantor's trade dress elements with the intent of causing confusion, mistake, and deception as to the source of origin, relationship, sponsorship, and/or association of Defendants' goods and services, and with the intent to palm off its goods as that of Alvantor, and, as such, Defendants have engaged in unfair competition under the California common law.

48.     Defendants' misuse of Alvantor's trade dress elements has caused and unless enjoined, will continue to cause irreparable harm and damage to Alvantor and its business, reputation and goodwill and has caused Alvantor to suffer monetary damages in an amount not thus far determined.

49.     By reason of such infringement, unfair competition and misappropriation and by Defendants' promotion and sale of the Infringing Products

in connection with Alvantor's trade dress elements, Defendant has caused, and unless restrained and enjoined will continue to cause, irreparable injury to Alvantor's reputation and goodwill and otherwise damage Alvantor in an amount not thus far determined.

50.    Defendants' conduct in intentionally misappropriating Alvantor's goodwill and engaging in unfair competition was intended to wrongfully enrich Defendants and to injure Alvantor deliberately and willfully in wanton disregard of Alvantor's rights and Defendants' legal obligations.  Alvantor is therefore entitled to an award of punitive damages in an amount of not less than $500,000, subject to discovery and proof at trial.

51.    Unless restrained and enjoined, Defendants' acts of infringement and unfair competition will cause irreparable harm and damage to Alvantor for which there is no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

### (FEDERAL TRADE DRESS INFRINGEMENT and UNFAIR COMPETITION UNDER LANHAM ACT § 43(a), 15 U.S.C. § 1125(a))

52.    Alvantor repeats and realleges and incorporates by reference 1 through 51 of this SAC as if fully set forth herein.

53.    Defendants make, import, distribute, use, offer to sell and/or sell in the United States, including this district, tent products that directly infringe Alvantor's Trade Dress in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and Federal Unfair Competition laws.

54.    Alvantor has a protectable trade dress in the overall appearance or "look" of its screen tents and bubble tents. The protectable overall appearance or "look" of Alvantor's screen tents and buble tents is inherently distinctive and non-functional, and includes the following inherently distinctive and non-functional trade dress elements-at-issue (as described below and shown in FIGS. 1 and 2 below):

1    -   The overall dome shape of the tent

2    -   The overall shape of the side panels

3    -   The number of side panels

4    -   Each of the side panels is either transparent or fully clear

5    -   Each of the side panels has a top arc section that is non-transparent
6        material

7    -   Each of the side panels has a bottom section that is non-transparent
8        material

9    -   The overall shape of the doors

10   -   The two doors being placed in two opposing side panels

11   -   The door zipper that runs along three sides of the door side panels

12   -   The door is hinged at the top of the side panel at the bottom of the top arc
13       section

14   -   The door can be rolled up and tied down at the top of the side panel

15   -   The lower skirt section extending from each side panel

16   -   The roof line or shape that forms into the opened tent and below the top of
17       each side panel.



**FIG 1 - Exemplary Plaintiff's Screen Tent**

SIXTH AMENDED COMPLAINT FOR UNFAIR COMPETITION, TRADE DRESS INFRINGEMENT, COPYRIGHT
INFRINGEMENT, AND INT'L INTERFERENCE WITH PROSP. ECONOMIC ADVANTAGE

1
2
3
4
5
6
7
8
9
10
11



**FIG. 2 - Exemplary Plaintiff's Screen Tent**

55.     The protectable overall appearance (including the trade dress elements-at-issue) or "look" of Alvantor's screen tents and bubble tents is not essential to the use or purpose of tents, does not affect the cost or quality, and does not put competitors at a non-reputation related disadvantage.  As stated in Paragraph 18 above, Alvantor distributes and sells its screen tents and bubble tents through the Amazon Marketplace.  A cursory search on the Amazon Marketplace for "screen tents", "bubble tents", and/or "pop up tents" would show numerous tents that are viable and competitive to Alvantor's screen tents and bubble tents, and that do not have the protectable overall appearance of Alvantor's tents.  A few of such viable and competitive tents are discussed below as examples.

56.     The Onnetila Instant Bubble Pod Tent (shown in FIG. 3 below) is an exemplary viable competitive tent that does not have Alvantor protectable overall appearance. Exhibit 19 includes the listing of the Onnetila Instant Bubble Pod Tent on Amazon.

26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



**FIG. 3 - Onnetila Bubble Tent**

16   57.   For example, the shape of the Onnetila tent is different and
17 distinguishable from the overall dome shape of the Alvantor tent. The side panels of
18 the Onnetila tent have a different shape than the side panels of the Alvantor tent.
19 The Onnetita tent does not have two doors being placed in two opposing side panels.
20 The door of the Onnetila tent is hinged on the side, rather than at the top of the side
21 panel at the bottom of the top arc section like the doors of the Alvantor tent. The
22 door of the Onnetila tent can be rolled sideway and tied to the side, while the doors
23 of the Alvantor tent can be rolled up and tied down at the top of the side panel. The
24 Onnetila tent does not have a lower skirt section that extends from each side panel.

25   58.   The East Oak Screen House Tent (shown in FIG. 4 below) is another
26 exemplary viable competitive tent that does not have Alvantor protectable overall
27 appearance. Exhibit 20 includes the listing of the East Oak Screen House Tent on
28 Amazon.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



**FIG. 4 - East Oak Screen Tent**

16    59.    For example, the East Oak tent has a generally box shape, and not the
17 overall dome shape of the Alvantor tent. The side panels of the East Oak tent have a
18 generally rectangular shape, while the side panels of the Alvantor tent have a
19 tapered shape. The door of the East Oak tent has a generally rectangular shape,
20 while the doors of the Alvantor tent have a tapered shape. The East Oak tent does
21 not have two doors being placed in two opposing side panels. The door of the East
22 Oak tent is hinged on the side, rather than at the top of the side panel like the doors
23 of the Alvantor tent. The door of the East Oak tent door can be rolled sideway and
24 tied to the side, while the doors of the Alvantor tent can be rolled up and tied down
25 at the top of the side panel.

26    60.    As yet another example, Defendants actually offer various bubble tents
27 at the web site www.bubbletent.us that have a completely overall appearance than
28 Alvantor's screen tents and bubble tents (as shown in FIGS. 5-7 below).

1
2
3
4
5
6
7
8



**FIG. 5 - Defendants' Bubble Tent**

9
10
11
12
13
14
15
16
17



**FIG. 6 - Defendants' Bubble Tent**

18
19
20
21
22
23
24
25
26
27

**FIG. 7 - Defendants' Bubble Tent**

28

61.     A cursory comparison of Defendants' non-infringing bubble tent products (shown in FIGS. 5–7 above) would show that Defendants' non-infringing bubble tents have a completely different overall appearance than Alvantor's tents.

62.     Unfortunately, although Defendants are capable of manufacturing non-infringing bubble tents, Defendants choose to copy the design of Alvantor's tents and offer tents (shown in FIGS. 8 and 9 below) that infringe Alvantor's trade dress.



**FIG. 8 - Exemplary Defendants' Infringing Tent**



**FIG. 9 - Exemplary Defendants' Infringing Tent**

63.     As stated in Paragraph 22 above, Alvantor has sold over 80,000 screen

tents and bubble tents, generating more than $15 million in sales.  With the aesthetically aggressive appearance and significant sales volume, the ornamental distinctive overall appearance or "look" of Alvantor's screen tents and bubble tents has become associated with the Alvantor brand.

64.    Alvantor has built up valuable recognition and good will in its distinctive trade dress of its tents.  Alvantor has expended, and continues to expend substantial time, effort, money, and other resources to advertise, market, promote, and develop and maintain the valuable goodwill that has come to be associated with its tents incorporating the unique and recognizable trade dress of its tents.

65.    As a result of Alvantor's efforts, the trade dress of its tents has acquired secondary meaning and distinctiveness and continues to have secondary meaning and distinctiveness among consumers and members of the industry. As an example of achieving "secondary meaning" and as discussed in Paragraph 24 and shown in Exhibit 2. Fox News published a segment on Alvantor's tents. *See* https://www.youtube.com/watch?v=Ns84Ezw5-Dc&t=2s.

66.    As additional examples of achieving "secondary meaning", there are numerous videos (with hundreds of thousand views in total) discussing Alvantor's tents on social media. Some of such videos are made and published by Alvantor. Some of such videos are made and published by third-parties. The videos on social media discuss the trade dress elements-at-issue in association with the Alvantor's brand and the Alvantor tents. Examples of such videos can be found at the following links:

- https://www.youtube.com/watch?v=LkOx_0_bm2Q&t=23s
- https://www.youtube.com/watch?v=_kcpy3QuD_A&t=2s
- https://www.youtube.com/watch?v=Nn_NrqcQgzE&t=249s
- https://www.youtube.com/watch?v=2Mq7Rdmq-AA
- https://www.youtube.com/watch?v=vmqmtaq-rog
- https://www.youtube.com/watch?v=R49BffE33AY&t=1s

- https://www.youtube.com/watch?v=T5KUNlzdGJ0
- https://www.youtube.com/watch?v=yBaeD6T5dJk&t=10s
- https://www.youtube.com/watch?v=rWhq6WDF1a8
- https://www.youtube.com/watch?v=zMg2o2DBmA8
- https://www.youtube.com/watch?v=ofHgAO-ZGCo
- https://www.youtube.com/watch?v=pKlMzC8Sf28
- https://www.youtube.com/watch?v=t98hFY0BBBU
- https://www.youtube.com/watch?v=L0eCrr_2M-s&t=24s
- https://www.youtube.com/watch?v=WWeRgI8PVPc&t=10s
- https://www.youtube.com/watch?v=FVcbIReXyEQ
- https://www.youtube.com/watch?v=aXSdFzxvyEg
- https://www.youtube.com/watch?v=eBZpxUJM2YU

67.     Defendants have used Alvantor's trade dress without the authorization of Alvantor and continue to trade off the goodwill and reputation created and maintained by Alvantor in Alvantor's trade dress. Defendants' activities are likely to cause confusion, mistake, or deception as to the source, origin, sponsorship or approval of Defendants' tents and Defendants' association with Alvantor. Defendants have offered tents that infringe Alvantor's trade dress on Amazon, Walmart's Website, Home Depot's Website, and Wayfair's Website, which are the same sales channels or platforms on which Alvantor offers its screen tents and bubble tents.

68.     By reason of Defendants' acts alleged herein, Alvantor has suffered and will continue to suffer damage to its business, reputation, and goodwill and monetary damages in an amount not yet determined. Defendants' actions have caused, and unless Defendants are enjoined by this Court, their actions will continue to cause irreparable harm and injury to Alvantor. Accordingly, Alvantor is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

69.     On information and belief, Defendants' infringing of Alvantor's Trade

Dress has been and continues to be willful and Alvantor is entitled to damages pursuant to 15 U.S.C. § 1117, including Defendants' profits, Alvantor's actual damages, and the costs of this action, enhanced profits and damages, and reasonable attorneys' fees.

## FOURTH CLAIM FOR RELIEF
## (COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501)

70.     Alvantor repeats and realleges and incorporates by reference 1 through 69 of this SAC as if fully set forth herein.

71.     Defendants have infringed Alvantor's copyrighted material Copyrights by using descriptions, on Defendants' Amazon listing pages for the Accused ASIN's, and on the Walmart Website Sale Pages, that were copied or otherwise derived from the Descriptions without Alvantor's authorization (the "Infringing Description(s)"). A true and correct copy of the Amazon listings for the Infringing ASIN's containing the Infringing Descriptions are attached hereto collectively as Exhibit 6, and the Walmart Website Sale Pages are attached hereto respectively as Exhibit 13 are incorporated herein by reference as if set forth in full, subject to further discovery and proof at trial of additional infringing descriptions improperly published by the Defendants to the direct harm of Alvantor.   The Infringing Descriptions are substantially similar to Alvantor's Descriptions.  Alvantor has been damaged by Defendants' infringing conduct in an amount to be determined at trial.

72.     Upon information and belief, unless enjoined, Defendants, and/or others acting on behalf of Defendants, will continue their infringing acts, thereby causing additional irreparable injury to Alvantor for which there is no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF
## (INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC
## ADVANTAGE- All Plaintiffs Against All Defendants)

73.     Alvantor and Leedor repeat and reallege and incorporate by reference 1

through 72 of this SAC as if fully set forth herein.

74.     Plaintiffs have an economic relationship with Amazon.com, under which Plaintiffs receive benefits. The economic relationship between Plaintiffs and Amazon also contains the probability of future economic benefits and rewards for Plaintiffs through their continued ability to sell on the Amazon e-commerce platform and marketplace.

75.     Defendants, as fellow sellers on Amazon.com, have knowledge of the economic relationship between Plaintiffs and Amazon and of Plaintiffs' benefits received thereunder. Defendants also know, or should have known, that the economic relationship between Plaintiffs and Amazon contains the probability of future economic benefits for Plaintiffs.

76.     Plaintiffs also have an economic relationship with current and prospective Amazon customers who have already purchased or who are willing to purchase Plaintiffs' products. Plaintiffs' economic relationship with current and prospective Amazon customers contains the probability of future sales and economic benefits for Plaintiffs.

77.     Defendants, as fellow sellers on Amazon, have knowledge of the economic relationship between Plaintiffs and current and prospective Amazon customers. Defendants also know, or should have known, that the economic relationship between Plaintiffs and current and prospective Amazon customers contains the probability of future sales and economic benefits for Plaintiffs.

78.     As described above, beginning in July 2022, Defendants have intentionally engaged in independently wrongful and actionable acts to disrupt Plaintiffs' economic relationship with Amazon and current and prospective Amazon customers, including copyright infringement and making Plaintiffs' performance under the Amazon Seller Agreement more difficult and expensive and disrupting Plaintiffs' ability to compete fairly with Defendants for sales from current and prospective Amazon customers. These acts include, but are not limited to,

-28-

Defendants violating the Amazon seller rules, policies, and agreements (including the Amazon Code of Conduct) to request that Amazon remove Plaintiffs' listings based on one or more false complaints that Plaintiffs' listings allegedly infringed Defendants' copyrights.

79.    Defendants' false, deceptive, and infringing conduct has disrupted Plaintiffs' economic relationship with Amazon. Defendants knew, or should have known, such false, deceptive, and infringing conduct would interfere with and disrupt Plaintiffs' economic relationship with Amazon.

80.    Plaintiff has suffered damages as a direct and proximate result of Defendants' interference with Plaintiffs' economic relationship with Amazon caused by Defendants' false, deceptive, and infringing conduct described above, including lost sales and damage to Plaintiffs' goodwill and reputation.

81.    Additionally, Defendants' false, deceptive, and infringing conduct has disrupted Plaintiffs' economic relationship with current and prospective Amazon customers. Defendants knew, or should have known, such false, deceptive, and infringing conduct would interfere with and disrupt Plaintiffs' economic relationship with current and prospective Amazon customers.

82.    Defendants' intentional conduct in connection with their requests that Amazon remove Plaintiffs' listings is deceiving actual and prospective Amazon customers by removing Plaintiffs' Amazon listings, such that consumers are being misled to believe that Plaintiffs offer no competing products. Defendants' false and deceptive conduct is influencing or is likely to influence consumers' purchasing decisions and is causing direct diversion of sales from Plaintiffs to Defendants and injuring the goodwill associated with Plaintiffs' products.

83.    Defendants' false, deceptive, and infringing conduct constituting interference is also independently wrongful and actionable as a violation of (i) the Lanham Act § 43(a); (ii) California's Unfair Competition Law, Business & Professions Code § 17200, et seq.; and (iii) Amazon's Code of Conduct, as

-29-

alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Alvantor respectfully requests the Court enter a judgment against Defendants as follows:

        A.    Issuing a permanent injunction enjoining Defendants, or anyone acting for or in concert with any of the Defendants, from:

                i.    Using any of the Alvantor intellectual property, including without limitation, any copyrighted materials and content, or the trade dress created by Alvantor, in connection with the sale, offering for sale, promotion, advertising, marketing and provision of tents, portable gazebos, and any related goods and/or services;

                ii.    Conducting any activities inside or outside of the United States, subject to proof at Trial, which would constitute unfair competition with respect to Alvantor's businesses and sales operations, or a false designation of origin of any of Alvantor's goods and products as emanating from or being associated or affiliated with, or sponsored by, Alvantor; and

                iii.    Using, copying, creating derivative works or otherwise infringing any of the Alvantor intellectual property, including without limitation, any copyrighted materials and content, or the trade dress created by Alvantor.

        B.    Ordering that Defendants destroy, or deliver to Alvantor for destruction, all goods, labels, tags, signs, packaging, as well as promotional, marketing or advertising material in Defendants' possession, custody or control, which copies or substantially copies any of the Alvantor copyright or trade dress;

C.      Awarding Alvantor all monetary damages, pursuant to 15 U.S.C. § 1117, which it has sustained as a consequence of Defendants' unfair competition in violation of 15 U.S.C. § 1125(a);

D.      Awarding Alvantor enhanced statutory damages, pursuant to 15 U.S.C. § 1117(a), due to Defendants' willful and intentional violation of Alvantor's rights under the Lanham Act;

E.      Requiring Defendants to account to Alvantor for all profits resulting from Defendants' infringement of any of Alvantor's intellectual property, including its copyrighted materials and trade dress, and that such award of profits to Alvantor be increased by the Court as provided for under 17 U.S.C. § 504;

F.      Awarding Alvantor compensatory damages in an amount to be determined at trial but believed to be at least $1,000,000;

G.      Awarding Alvantor all monetary damages which it has sustained as a consequence of Defendants' violations of California's common law of unfair competition;

H.      Awarding Alvantor damages caused by Defendants' actions resulting in Alvantor's lost sales due to Amazon's removal of Alvantor's "Best Seller" and "Preferred Seller" status on the Amazon Sales Web Site;

I.      Awarding Alvantor punitive damages in an amount of not less than $500,000 based on Defendants' deliberate and willful conduct; and

J.      Granting such other and further relief as the Court deems just and proper, including but not limited to all reasonable Attorney's Fees and Costs incurred herein as requested by Alvantor as evidenced to this Court.

WHEREFORE, Plaintiffs Alvantor and Leedor respectfully request the Court enter a judgment against Defendants as follows with respect to the Fifth Claim for Relief:

A.      Compensatory and consequential damages (including but not limited to lost profits) in an amount according to proof;

1          B.     For attorneys' fees as permitted by law;

2          C.     For costs of suit incurred herein;

3          D.     For interest as permitted by law;

4          E.     Punitive and exemplary damages in an amount to be determined at trial; and

6          F.     Such other and further relief as the Court may deem just and proper.

Dated:  November 6, 2023        FORTIS LLP

By: /s/Sang Dang
Attorneys for Plaintiffs
ALVANTOR INDUSTRY CO., LTD and
NINGBO LEEDOR INDUSTRY CO., LTD.

# **JURY DEMAND**

Plaintiffs Alvantor and Leedor hereby demand trial by jury on all claims and issues so triable.


Dated:  November 6, 2023                    FORTIS LLP


By:  /s/Sang Dang
Attorneys for Plaintiffs
ALVANTOR INDUSTRY CO., LTD and
NINGBO LEEDOR INDUSTRY CO., LTD.

SIXTH AMENDED COMPLAINT FOR UNFAIR COMPETITION, TRADE DRESS INFRINGMENT, COPYRIGHT
INFRINGEMENT, AND INT'L INTERFERENCE WITH PROSP. ECONOMIC ADVANTAGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CERTIFICATE OF SERVICE

I, Vanessa Parsons, declare as follows:

I am employed in the County of Orange, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 650 Town Center Drive, Suite 1530, Costa Mesa, CA 92626.  On November 6, 2023, I served the following document(s):

**SIXTH AMENDED COMPLAINT FOR UNFAIR COMPETITION, TRADE DRESS INFRINGEMENT, COPYRIGHT INFRINGEMENT, AND TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

on the parties stated on attached service list

☒  **BY COURT'S CM/ECF SYSTEM.**  Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed on the Service List. **BY E-MAIL.**  By sending via e-mail, to the parties for service of the foregoing documents to the persons listed on this Service List.

☐  **(STATE)**    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒  **(FEDERAL)**  I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 6, 2023, at Costa Mesa, California.

/S/ VANESSA PARSONS
Vanessa Parsons

SIXTH AMENDED COMPLAINT FOR UNFAIR COMPETITION, TRADE DRESS INFRINGMENT, COPYRIGHT INFRINGEMENT, AND INT'L INTERFERENCE WITH PROSP. ECONOMIC ADVANTAGE

**SERVICE LIST**

| BUCHE & ASSOCIATES, P.C.<br>Bryon E. Ma<br>2029 Century Park E., Ste 400N<br>Los Angeles, CA 90067<br>Tel: (310) 593-4193<br>Fax: (858) 430-2426 | *bma@buchelaw.com*<br><br>*Attorneys for Defendants.*<br>*SHENZHEN JORDA TRADING CO.,*<br>*LTD., DBA ELEVENS, PEX FIX, ET*<br>*AL., SHENZHEN 703, AKA,*<br>*SHENZHEN QILINGSAN NETWORK*<br>*TECHNOLOGY CO., LTD.,*<br>*NEUTYPE, AND MIRUO MIRROR,*<br>*INC..* |
|---|---|
| GETECH LAW LLC<br>Ge (Linda) Lei *(Pro Hac Vice)*<br>203 N. LaSalle, Ste 2100<br>Chicago, IL 60601<br>Tel: (312) 888-6633<br>Fax: (217) 970-1066 | *Linda.Lei@getechlaw.com*<br><br>*Attorneys for Defendants, SHENZHEN*<br>*JORDA TRADING CO., LTD., DBA*<br>*ELEVENS, PEX FIX, ET AL.,*<br>*SHENZHEN 703, AKA, SHENZHEN*<br>*QILINGSAN NETWORK*<br>*TECHNOLOGY CO., LTD.,*<br>*NEUTYPE, AND MIRUO MIRROR,*<br>*INC..* |

SIXTH AMENDED COMPLAINT FOR UNFAIR COMPETITION, TRADE DRESS INFRINGMENT, COPYRIGHT INFRINGEMENT, AND INT'L INTERFERENCE WITH PROSP. ECONOMIC ADVANTAGE